IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br>V.<br><br>Luis R. Martínez Rivera<br>Defendant | Criminal No. 17-507, [CCC] |

**SENTENCING MEMORANDUM**

To the Court:

Come now, the above captioned defendant, by and through undersigned attorney and states, alleges and requests:

1. The defendant, a 40-year-old man, has worked for the most part of his adult life and has "some university" schooling. His family gave him the best rearing and education they could, at their home and environment. The defendant has never faced emotional, nor mental history, has no drug use at all. He has procured to survive, as best he could. Always trying to build a better environment for his family; that is, his seven year old daughter and her grandmother; whom currently live with him under his care. He was doing well, till his arrest. His economic solvency has always been at issue. That's why, a few years ago, he shose to leave his "home", at Caguas, Puerto Rico and relocate. Before then, his family life, economic means were a constant turmoil. He left and ever since he has been trying hard to make ends meet.

2. After such time, that the defendant, relocated to mainland United States, specifically at Florida, and has, ever since, lived and worked there, from 2011. He has had a fruitful, tranquil life and gainful employment; till he needed to return to Puerto Rico, to face this case. He travelled and self-surrendered. Before these issues which now concern his criminal exposition, the defendant had never involved himself in any

criminal conspiracy activity at all. He has never consumed controlled substances. But for the short period within his regretful conduct which led to his conviction, the defendant let a clean life. Albeit not free from some issues, before leaving Puerto Rico, to which he was brought to respond, by the Puerto Rico legal system and was not found responsible for any criminal activity. The same cannot be said for financial and child support issues.

3. Arrested and Indicted; he immediately realized where he failed All he wanted was to enhance his family's wellbeing. Not hurt them nor become a delinquent! He accepted his responsibility without any further considerations. He pled guilty as per the best offered plea agreement. He has suffered for having poor judgement. It has been devastating experience of not searching at home, for the solace and dreams of a better day, he once, and again, has sought. But has suffered intensely for his family's sorrow caused by his actions.

4. The defendant has admitted to the facts and stressed: *his repentance.* Despair, ignorance and lack of true knowledgeable reasoning, brought the defendant to wrong actions and results. The course of action, that resulted in criminal conduct, which has actually brought sorrow and a worsening of his own and family's wellbeing.

5. In his mind, he acted in despair, seeking to define his future where he could live, work, strive in peace, respond to old obligations to his children. Peer pressure and not being able to care for his children and family brought about his bad and regrettable judgement. All he has done; as his perspective allows, is insist in seeking an opportunity to provide his family a better life. He has never had the intent to do harm or encroach in governmental subsidy. These wishful pursuits then, by his actions, far from being attainable, did make matters worse. This has been understood by the defendant and reflects his remorse and repentance for his actions in this case. He is not negating or excusing his responsibility to our community and its law. The only close victims who are, besides our community, those for which he has so hard tried to make a better life; his children and his parents are the real losers. This was not part of their routine. Neither was it what defendant sought. Additionally,

defendant's children's loss of a potential provider, as an emotional and economical centerpiece.

6. He will promptly respond, at least what was agreed to, within his plea agreement. If the court so allows. We request nothing beyond what we bargained for. Nevertheless, we do rely on the court's discretion and belief the court can consider what pressure is placed unto a defendant to, either go to trial, or accept a plea. Sometimes, there aren't many options. No matter what logic, legal reasoning is involved, to counter offer; if these counteroffers are not what the government is willing to accept. So, while remorse, regret, and acceptance are a integral part of the plea negotiation; the virtue of acceptance of responsibility, sometimes must accept a course of action the government can offer to satisfy an agreement; which otherwise cannot be had.

7. Life has more than one way of seeing human endeavor. Maybe defendant's case could be seen as a belated wrong and trivial response to his children's belated need for parental support. He saw a myopic world. He was struggling to stay well and maintain his wellbeing; that is, get enough money to respond to his needs and his children. The world, he developed into since born, was that of, somewhat, full of needs and interrogations. The outside world was like a bad TV, dark comedy series. Series of nice and beautiful homes, yachts, good rums, cars, adventures, beautiful women and luxury were only palpable in TV, and an outside world he could somehow see but not touch. He was simply poor; no matter how you cut, dice, and scramble it. He was poor emotionally, economically, educationally and most likely his ignorance was bolstered by the stigma of how, we the people see our peers: the housing project stigma, poor people, and all circumstances and prejudice which permeate our societal environment.

8. We too, face sometimes, circumstances which menace our way of life, our wellbeing. But we have been luckier than most; including the defendant. We have some education, some economic "advantage"; but mainly whether poor, rural country living, cheap low-class projects, etc. mostly we had parents who cared and struggled throughout their lives to make us better. To educate and give us an opportunity to

raise above them. Be better humans, social beings and to pursue a family consonant with the societal growth into safety, education and love of life and the respect of our laws. These, the defendant lacked. He did not have the ingredients to fight beyond his familiar world.  There he saw money could be had, he must have had a sense of being, belonging. The agreeing to procure the firearms deals, "*helped*" him muster and cope with everyday life's economic stress. This peer pressure was greater than he could then reason; even if it meant losing his liberty, youth, freedom as we know it, to go about our lives without feeling being put down, rejected and at least being able to cope with life as it presents itself; not feeling the extreme need for subterfuge from everyday life.

9.  This is the world which many of our young, less fortunate defendants face and cannot, for themselves describe. They cannot "see" themselves before they face once, twice, or more times, the wrath of law. At that time their liberty, family, way of life becomes reality. They sometimes struggle to face themselves, face the world as is, before realizing that they got there, by their own circumstances and wrong doings.

10. But we, the people, better equipped to see ourselves in this world, sometimes cannot see where we have failed as a society. Where we make assumptions and take for granted, our need to structure a way of life, without seeing defendant's world. In that world, rehabilitation, punishment, respect for the law, and all other legal concepts, are not the same we believe in our world. We take for granted, that it is as it should be. But sometimes we assume expertise, all science and its use, as structured and non-fallible. It has been proven, time and again, that our world, is also fallible. Sometimes, and many a time, experience has shown us that justice is a piecemeal creature which can make us grow, or not. It's a day to day experience which can adjudicate individual responsibility, tailored case by case, under the circumstances of each individual.

11. We must see ourselves as well. Are we doing all we can do, to understand what we are faced with? Has our society done what it could? We now face this case. This is an individual in a world which has formatted us all, as individuals in a world full of imperfections and contradictions. Justice was since the beginning of time, meant to

be objective. Not subject to the tone of second guessing. To be sentenced and punished by the theory that hearsay, unproven facts, are either a mishap of another court system, or a miscarriage of law, even when our legal system has approved such legal theory, to mean reliable "facts" and therefore usable for sentencing purposes, we believe ought not occur. It seems to contradict the rigor in our legal system, which is to put into evidence every piece of fact, circumstance, under the light of our court system's processes to be proved beyond reasonable doubt, before it can come into play to determine the guilt or innocence of a defendant. Sentencing should be no different. Sentencing should not be a catch all process, to mend whatever may have not been done, or not done well, in another forum. Sentencing ought to be for the proven facts, agreed facts, which were present under scrutiny in the procedure now in place.

12. These conflicting perceptions seem to implicate that we are facing two worlds, with different sets of rules, to validate justice. We must agree that justice is naturally of human bondage. That is, we cannot depart from our human imperfections, wants, needs and our created structure to stablish peace, order, security and laws that will convey socially accepted conduct, to a degree sometimes not well set, understood and ever changing to meet new standards as life changes. The complexity of social conduct, sometimes, needs to consider what it is that we want to regulate and to what extent such regulation helps, or not, the needs of our social environment. Our kaleidoscopic social structure and all its members are part of a world that today seems confusing and unjust to all. We all should strive to make sense of what we do, in the best interest of a healing process within social growth. There are some, that need more attention than others. Some need more healing than others. We all need a sense that we are doing all we can to grow into a healthy, social environment that proposes to serve the best interest of all; including the less fortunate of our world.

13. To his family and community, it will take time, to face his failure and response thereto. The law requires a reasonable sentence which considers the crime, punishment therefore, rehabilitation opportunities and defendant's conduct while confronting his responsiveness to his criminal conduct. These are factors which the Court should consider in determining the type and length of sentence as sufficient,

but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

14. The primary directive in § 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph § 3553(a)(2) states that such purposes are:

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) To afford adequate deterrence to criminal conduct;

(C) To protect the public from further crimes of the defendant; and

(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

15. In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1) The nature and circumstances of the offense and the history and characteristics of the defendant, (§ 3553(a)(l);

2) The kinds of sentences available (§ 3553(a)(3);

3) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§ 3553(a)(6); and the need to provide restitution to any victims of the offense. (§ 3553(a)(7).

16. Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the § 3553(a) factors, the judge is required to recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation. Under 18 U.S.C. § 3661, no limitation shall be placed on the information concerning the background, character, and conduct of the defendant which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence. This statutory language certainly overrides the (now-advisory) policy statements in

Part H of the sentencing guidelines, which list as not ordinarily relevant to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, etc. See U.S.S.G.5H1. These concepts have been strengthened by case law very recently to reiterate the courts power to exercise its discretion in the process of sentencing.

17. We believe that a sentence, in conformity to the plea agreed upon, or by the court's discretion, in conformity to the Presentence statutory principles, the ***minimum available***, can best serve the interests and sentencing factors involved. It will promote sending a message to others in a similar disjunctive position and probable despair. The defendant has been punished by his conscience, shame, for what he has done and has recognized and truly accepted his criminal conduct; harmful first to his family, to our society and himself. Taking into account his criminal conduct and sentencing options, as so well defined, in the Presentence Report, repentance, family history and personal conditions and factors, seems to us, justify as reasonable the kind of sentence discussed herein and proposed.

18.  The defendant has been on bail, since his arrest. He has travelled, as required from and to Florida where he lives. He has complied with all bail conditions. The defendant has been assured of a continuation of his  job; as soon as he returns to Florida. Therefore, In the event the court should consider a sentence to be served incarcerated, the Bureau of Prisons ("BOP")'s Security Designation and Custody Classification Manual, Program Statement 5100.08 ("the Manual"), establishes policy regarding inmate security-level classification. Where the judgment permits a defendant to voluntarily surrender, three points are deducted from his Security Point Total, which affects his eligibility for certain institutions and programs. Inmates with lower security classifications are able to serve their sentences in lower security institutions. Given the current over-crowding of prisons and safety concerns in high-security institutions, the security classification can greatly impact the inmate's experience and promote the rehabilitative ends of sentencing. In order to warrant the three-point reduction, the voluntary surrender cannot occur on the same day as sentencing. We therefore do request that the defendant be allowed to self-surrender at the institution the court may recommend, and the bureau may deem adequate and

proper. Of course, the defendant is most willing to pay his travel expense to receive the benefits for being allowed to self-surrender, to the institution so designated.

19. While incarcerated, if that should be the case, the defendant hopes and looks forward to gaining job training. The defendant does have family in the State of Florida and hopes that such state be favorably considered and recommended by the court for his appointment thereto.

20. Why, from the Court we request that after consideration of the different factors as per sentencing, a minimum sentence, be imposed, along with any other conditions as the court may deem fit.

I Certify: That on Monday, September 03, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to AUSA and other Defense Attorneys.

Submitted,

In San Juan, Puerto Rico, on September 3, 2018.

*I Certify*: That on Monday, September 03, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to The United States Attorney's Office, AUSA Victor Acevedo and other Defense Attorneys.

Submitted, In San Juan, Puerto Rico, on September 3, 2018.

*S/Wilfredo Ríos Méndez*
Wilfredo Ríos Méndez,
USDC 128103
PO BOX 8334, CAGUAS, PR 00726
Tel/ Fax 787-746-4467
CEL 787-398-3284
wriosmendez@gmail.com
Attorney for defendant